IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LATOSHA SMITH<br>1015 Woodchip Rd.<br>Lumberton, NJ 08048<br><br>   Plaintiff,<br> v.<br><br>SJF CCRC, INC.<br>d/b/a Lions Gate<br>1100 Laurel Oak Rd.<br>Voorhees, NJ 08043<br><br>   Defendant. | CIVIL ACTION<br><br>No.<br><br><br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Latosha Smith, (*hereinafter* referred to as "Plaintiff," unless indicated otherwise), by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.  This action has been initiated by Plaintiff against Defendant for violations of Title VII of the Civil Rights Act of 1964 ("Title VII - 42 U.S.C. §§ 2000e, *et. seq*.) and the New Jersey Law Against Discrimination ("NJ LAD" - N.J.S.A. 10:5-1, *et. seq*.). Plaintiff asserts, *inter alia*, that she was unlawfully discriminated against, retaliated against, and terminated from her employment in violation and state and federal law. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.  This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress of such federal statutes.

1

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this State and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district, in addition, venue is properly laid in this district because Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the District of New Jersey for this action.

## PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Defendant is a senior living provider located at the above-captioned address that offers residents assisted living and independent living services.

8. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

9. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10. Plaintiff was hired to work for Defendant on or about July 31, 2019 as a Licensed Practical Nurse.

11. Since the beginning of Plaintiff's employment with Defendant, she was a hard-working and dedicated employee.

12. For example, Plaintiff worked through the COVID-19 crisis without a complaint and up until about the summer of 2020 received positive feedback regarding her employment from Defendant's management.

13. Prior to being hired by Defendant, Plaintiff and Defendant's Unit Manager, Patricia Wilson (hereinafter "Wilson"), knew each other personally, as they both used to attend the same church.

14. The church that Plaintiff and Wilson both attended (as discussed *supra*) was a non-denominational church that practiced Pentecostal theology.

15. Plaintiff left the aforesaid church prior to her hire date with Defendant because of issues with the church's administration and not wanting to subject herself to that environment any longer.

16. Prior to her hire, Plaintiff asked Wilson if her decision to leave and distance herself from the church would be an issue with them working together and she assured Plaintiff it would not be. However, this did not end up being true.

17. Shortly after being hired with Defendant, Wilson began to ask Plaintiff to participate in fundraisers and other activities associated with the church that she left. Plaintiff told Wilson that she did not want to participate, as she did not want to associate herself at all with this church or support this church in any manner.

18. On one occasion, Plaintiff was asked by Wilson to wear a shirt that someone from the church had made and to take a picture in the shirt so Wilson could post it on her social media account (on which Wilson is connected with multiple members of the aforesaid church). Plaintiff declined to do so because again, she did not want to be associated with the church in any way.

19. Wilson continued to press the issue of Plaintiff wearing the aforesaid shirt and taking a picture in it. Eventually, Plaintiff was told by her supervisor, Virgilio Rosano (hereinafter "Rosano"), that if she did not do as Wilson asked, Wilson would pursue her and it would "not be good once she [Wilson] locks in on [her]." Despite this threat, Plaintiff again declined to wear the shirt or take a picture in it.

20. Following several instances wherein Plaintiff had to tell Wilson that she did not wish to participate in any fundraisers or activities associated with the church, Wilson began to subject Plaintiff to extreme hostility and animosity. For example, but not intending to be an exhaustive list:

   a. Wilson began to keep close surveillance on Plaintiff's notes, attempting to find mistakes and/or other issues so she could discipline Plaintiff. Plaintiff did not observe her doing this with other employees;

   b. Wilson also began to consistently check on Plaintiff's patients in attempts to find reasons to discipline Plaintiff. Again, Plaintiff did not see her do this with other employees;

   c. On May 12, 2020, Rosano informed Plaintiff that he was told to "find anything" to discipline Plaintiff;

  d. On May 28, 2020, Plaintiff was issued her *first* verbal coaching related to her notes (for which Wilson was keeping close surveillance on). This coaching was completely unwarranted and discriminatory;

  e. Wilson required Plaintiff to perform housekeeping duties (but did not require other nurses to do the same); and

  f. On June 4, 2020, Plaintiff was taken off the schedule and investigated for documenting on a patient's behavior and not chemically restraining him – which is completely absurd (as Plaintiff only did what she was taught to do). Plaintiff was later given a write up for the same reason and told that if she did not sign it, she would be terminated.

21. Following the aforesaid June 4, 2020 discipline, Plaintiff reported her concerns of religious discrimination to Defendant's Human Resources ("HR") department.

22. In connection with her complaints of religious discrimination, Plaintiff spoke to two (2) different HR representatives, including Karen Corneal (hereinafter "Corneal") and Carolyn Russell (hereinafter "Russell"). However, Plaintiff's complaints were never properly investigated and no remedial action was ever taken.

23. As a result of Defendant's HR Department's failure to properly correct the hostile and discriminatory work environment that Plaintiff was being subjected to based on her religious choices, she was subjected to retaliation and further discrimination.

24. For example, Wilson began plotting with Plaintiff's supervisor and other employees to find ways to discipline Plaintiff and/or terminate her employment. This was overheard by another staff member.

25. Shortly thereafter, on June 17, 2020, Plaintiff was given a final written warning for another pretextual reason and threatened with termination if she committed any additional alleged infractions.

26. Following her June 17, 2020 write up, Plaintiff made the choice to escalated her complaint of religious discrimination (and now retaliation) to Defendant's Chief Executive Officer, Susan Love (hereinafter "Love").

27. Plaintiff met with Love in person to address her aforesaid concerns on or about June 17, 2020 and followed up with a written email thereafter.

28. In the aforesaid email following her June 17, 2020 meeting with Love, Plaintiff outlined for Love in detail what her concerns were and informed Love that while she had expressed these same concerns to Respondent's HR department (including Russell) previously, her complaints fell on deaf ears.

29. On June 25, 2020, Plaintiff was informed by Love that after an alleged "thorough investigation" (purported completed by Russell), she [Love] could not substantiate Plaintiff's claim regarding harassment or a hostile work environment.

30. Following her complaint to Love in June of 2020, Plaintiff continued to be subjected to harassment, micromanaged, kept under close surveillance, and discriminated/retaliated against by Defendant's management.

31. On or about November 19, 2021, Plaintiff again complained to Rosano about the discriminatory and retaliatory treatment that she was receiving but her concerns were ignored and instead, she was issued another pretexutal discipline on the same day.

32. Because Plaintiff's complaints of religious discrimination and retaliation were clearly not being properly investigated and the harassment was only getting worse, Plaintiff

retained an attorney and filed a Charge of Discrimination (hereinafter the "Charge") with the EEOC in or about mid-December of 2020 for religious discrimination and retaliation (for having complained of religious discrimination).

33. In addition to filing the Charge with the EEOC, Plaintiff's attorney also sent a copy of the same directly to Defendant.

34. After receiving a copy of the Charge, Defendant's management did not change their discriminatory or retaliatory behavior. Instead, they subjected Plaintiff to further discrimination and retaliation. For example, but not intending to be an exhaustive list, Defendant's management:

 a. began a witch hunt in an attempt to find things for which they could discipline and/or terminate Plaintiff;

 b. attempted to make Plaintiff do things that were against policy (presumably so they could then write her up for it later);

 c. began plotting to get rid of Plaintiff;

 d. began to keep even closer surveillance on Plaintiff's whereabouts, her patients, and her performance;

 e. ignored Plaintiff's continued complaints of discrimination;

 f. refused to assist Plaintiff with any issues she was having at work; and

 g. treated Plaintiff with increased hostility and animosity.

35. As a result of the foregoing, Plaintiff continued to complain of retaliation to Defendant's management. For example, on January 3, 2021, Plaintiff sent an email to Defendant's CFO, David Thompson (hereinafter Thompson), Corneal, Russell, and Love, stating in part:

> I was just informed that my supervisor Virgil Rosano, unit manager Patricia Wilson and Rehab 2 nurse Patricia O. were overheard planning on retaliating against me by setting me up and taking pictures and accusing me of wrong doing and making sure that they have a witness at all times so that its their word against mine because they want me terminated immediately. I was told that they are infuriated with me for seeking help . . . They continue to create a hostile environment for me and the harassment has intensified since I sought legal counsel in this matter, by law I have a right to work in a environment that is hostile free with no retaliation . . . I ask that you look into this, the law states that I have a protected right to not be retaliated against. I just want to be able to come to work do my job to the best of my ability in a conducive environment and go home respectfully [sic throughout].

36. Plaintiff's expressed concerns of discrimination and retaliation against Defendant's management were not taken seriously and rather than have a neutral party investigate her complaints, Defendant instead assigned Russell to do so – someone whom Plaintiff had specifically indicated she did not feel comfortable with because of the way she was treated following her initial complaints of religious discrimination.

37. Plaintiff's concerns regarding Russell were justified, as almost every time Russell was assigned to investigate Plaintiff's complaints of discrimination and retaliation, Russell instead focused her entire investigation on what Plaintiff allegedly did wrong, rather than actually investigating or taking any remedial action against the individuals whom she complained were discriminating and/or retaliating against her.

38. After engaging in protected activity on January 3, 2021, Plaintiff continued to complain (verbally and in writing) of retaliation as well as Russell's sham and biased investigations into her aforesaid complaints.

39. In response to the foregoing, Defendant issued Plaintiff additional discipline and ultimately terminated her employment on January 13, 2021 for allegedly leaving medication

unattended in a resident's room, which was purportedly witnessed by Wilson nearly two weeks before her termination on January 1, 2021.

40. Plaintiff believes and therefore avers that her termination is completely pretextual and that she was really terminated because of her religious beliefs/choices and or because of her complaints of religious discrimination and retaliation under Title VII and the NJ LAD.

## Count I
## Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
### ([1] Religious Discrimination; [2] Retaliation; & [3] Hostile Work Environment)

41. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

42. Plaintiff was subjected to a hostile work environment during her period of employment through disparate treatment, pretextual admonishment, and demeaning/discriminatory treatment towards her due to her religious beliefs/choices, her complaints of religious discrimination, and/or her complaints of retaliation.

43. Plaintiff also believes and therefore avers that she was issued pretextual discipline and ultimately terminated because of her religious beliefs/choices, her complaints of religious discrimination, and/or her complaints of retaliation.

44. These actions as aforesaid constitute violations of Title VII.

45. Plaintiff properly exhausted her administrative remedies by filing with the Equal Employment Opportunity Commission and initiating this lawsuit within 90 days of receipt of a right-to-sue letter and/or notice of dismissal.

## Count II
### Violations of the New Jersey Law Against Discrimination ("NJ LAD")
([1] Religious Discrimination; [2] Retaliation; & [3] Hostile Work Environment)

46. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47. Plaintiff was subjected to a hostile work environment during her period of employment through disparate treatment, pretextual admonishment, and demeaning/discriminatory treatment towards her due to her religious beliefs/choices, her complaints of religious discrimination, and/or her complaints of retaliation.

48. Plaintiff also believes and therefore avers that she was issued pretextual discipline and ultimately terminated because of her religious beliefs/choices, her complaints of religious discrimination, and/or her complaints of retaliation.

49. These actions as aforesaid constitute violations of the NJ LAD.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B. Plaintiff is to be awarded long-term damages for harm to his licensure at the hands of Defendant, damages which were directly and proximately caused by Defendant;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F. Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: June 3, 2021