[Docket No. 8]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| LATOSHA SMITH, | |
| Plaintiff, | Civil No. 21-12110 (RMB/AMD) |
| v. | |
| SJF CCRC, INC. *doing business as* LIONS GATE, | OPINION |
| Defendant. | |

**APPEARANCES**

Jeremy M. Cerutti
Allison A. Barker
Ari R. Karpf
Karpf, Karpf & Cerutti, P.C.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020

    *On behalf of Plaintiff*

Jonathan D. Ash
Fox Rothschild LLP
997 Lenox Drive, Building 3
Lawrenceville, NJ 08648

    *On behalf of Defendant*

**BUMB, U.S. District Judge**

This matter comes before the Court upon the Motion to Dismiss by SJF CCRC, Inc., doing business as Lions Gate ("Defendant"). [Docket No. 8.] For the reasons set forth in this Opinion, Defendant's motion shall be denied.

I.     **FACTUAL BACKGROUND**

Latosha Smith ("Plaintiff") initiated the present action upon filing a

Complaint with this Court on June 3, 2021, alleging claims of unlawful religious

discrimination, retaliation, and hostile work environment against Defendant, her

former employer, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII")

and the New Jersey Law Against Discrimination ("NJLAD").  [Docket No. 1

("Complaint").]  Defendant "is a residential independent and assisted living

community for senior citizens located in Vorhees, New Jersey."  [Docket No. 8-1

("Defendant's Brief"), at 6.]  Plaintiff maintains that she provided services to

Defendant as a Licensed Practical Nurse ("LPN") until Defendant terminated her

employment in mid-January 2021.  [Docket No. 13 ("Plaintiff's Brief"), at 4.]

Plaintiff's claims largely concern the actions of one of Defendant's Unit

Managers, Patricia Wilson ("Wilson").  [Plaintiff's Brief at 4.]  Prior to accepting

Defendant's offer of employment on or about July 31, 2019, Plaintiff and Ms.

Wilson "attended the same non-denominational church that practiced Pentecostal

theology."  [Complaint at 3, ¶ 10; Plaintiff's Brief at 4.]  Prior to her first day of

employment with Defendant, Plaintiff left that church "because of issues with the

church's administration."  [Plaintiff's Brief at 4.]  However, Plaintiff alleges that

shortly after her employment with Defendant commenced, Ms. Wilson started

pressuring her into participating in activities related to Plaintiff's former church while

the two were at work.  [*Id.*]  In her Complaint, Plaintiff alleges, more specifically,

that shortly after her hire date, Ms. Wilson "began to ask Plaintiff to participate in

fundraisers and other activities associated with the church that she left," and on one occasion asked her to wear a shirt made by someone from the church for a picture that Ms. Wilson intended to post on her social media account.  [Complaint at 3-4 ¶¶ 17-18.]  Plaintiff alleges that over time, given her refusal to participate in these activities, Ms. Wilson increasingly displayed hostility and animosity towards her "including close surveillance, attempting to find pretextual reasons for discipline, directing [her supervisor] to 'find anything' to discipline [her and], requiring [her] to do housekeeping duties (outside her job description, what other nurses [were] not required to do)."  [Plaintiff's Brief at 4.]

With respect to her retaliation claims, Plaintiff alleges that she complained internally to Defendant's human resources department to express her concerns of religious discrimination, but her complaints were not investigated.  [Plaintiff's Brief at 4.]  Plaintiff even escalated her internal complaints to Defendant's Chief Executive Officer and Chief Financial Officer, but "she was ignored and instead issued pretextual discipline."  [*Id.* at 4-5.]  In or around mid-December of 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  [*Id.* at 5.]  Plaintiff argues that she "complained [internally] again in January 2021," but "[s]hortly thereafter, [she] was terminated for a pretextual reason."  [*Id.*]

## II.    JURISDICTION

This Court has original subject matter jurisdiction over the present action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises, in relevant part,

under the laws of the United States, specifically, Title VII of the Civil Rights Act of 1964.  This Court is also satisfied that venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) given that Defendant is a resident of this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## III.   LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005).  It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (*first citing Conley v. Gibson*, 355 U.S. 41, 47 (1957); *then citing Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994); *and then citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679 (2009)).  A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

The Court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 563, n.8 (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*.").  "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Malleus*, 641 F.3d at 563 (*quoting Twombly*, 550 U.S. at 570).

## IV.   ANALYSIS

Defendant makes two main arguments in support of its pending motion.  First, Defendant argues that Plaintiff has failed to allege a viable claim of religious discrimination or religious harassment because her claims are not "religious in nature."[1]  [Defendant's Brief at 9-10 (*citing Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487, 488, 490-93 (3d Cir. 2019)).]  To put it differently, "[n]ot every activity related to a church is religious in nature," such as fundraising activities, and Plaintiff's "refusal to participate . . . was also based on non-religious reasons, namely, the fact that she disagreed with her former church administration." [Docket No. 14 ("Defendant's Reply Brief"), at 3-4.]  Second, Defendant argues that the Court must dismiss Plaintiff's retaliation claims because her underlying complaints of discrimination and harassment "are not related to Plaintiff's religious affiliation, practices or beliefs," such that Plaintiff "acted unreasonably and in bad faith when she made the initial complaint and every complaint stemming therefrom."  [Defendant's Brief at 13, 16.]

---

[1] Defendant argues that because Plaintiff has failed to allege any harassing or discriminatory conduct related to her religion, she is unable to make out a *prima facie* case of harassment and/or discrimination under Title VII and NJLAD, both of which require that the alleged harassing and/or discriminatory conduct be based on Plaintiff's membership in a protected class.  [Defendant's Brief at 10, nn. 2-3 (citations omitted).]  However, Plaintiff is correct that at this stage of the litigation, she is "not required to prove a *prima facie* case, much less to engage in the sort of burden-shifting rebuttal that *McDonnell Douglas* requires at a later stage in the proceedings. It suffices for her to plead facts that, construed in her favor, state a claim of discrimination that is 'plausible on its face.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016) (citations omitted).

6

At this juncture, although this Court has its doubts, it is not firmly convinced that that Plaintiff's discrimination and harassment claims are "not religious in nature" as suggested by Defendant.  Defendant correctly points out that the Third Circuit has adopted the following three-part definition regarding what constitutes a "religion":

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs.

[Defendant's Brief at 10 (*citing Fallon*, 877 F.3d at 491 (*quoting Africa v. Commonwealth of Pennsylvania*, 662 F.2d 1025, 1032 (3d Cir. 1981))).]  Federal courts also recognize that an individual's religion extends to conformity or non-conformity with a specific set of religious beliefs and/or practices:

> A viable claim for discrimination may arise when a plaintiff claims he was discriminated against because he did not possess a particular characteristic.  In *Shapolia v. Los Alamos Nat. Laboratory*, 992 F.2d 1033 (10th Cir.1993), the plaintiff claimed that her supervisor gave her a negative job evaluation because she was *not Mormon*.  The Court noted that 'Title VII has been interpreted to protect against requirements of religious conformity and as such protects those who refuse to hold, as well as those who hold, specific religious beliefs.' *Id.* at 1036.

*Lampros v. Banco do Brasil, S.A.*, 2012 WL 6021091, at \*6 (S.D.N.Y. Dec. 4, 2012), *aff'd*, 538 F. App'x 113 (2d Cir. 2013) (alterations in original).  Courts in this District have also recognized that "rejection of [a] superior's more stringent religious views" may form the basis for an individual's protected religion views under Title VII.

*Smith v. City of Philadelphia, Dep't of Licenses & Inspections*, 285 F. Supp. 3d 846, 853

(E.D. Pa. Jan. 19, 2018) (denying a motion for summary judgment because, although a "close call," a reasonable jury could conclude that the plaintiff's religion "was the moving force in his not being offered permanent employment" after he expressed disdain for his superior's stricter views of how their shared Catholic religion should be practiced).

Having considered Plaintiff's allegations in the light most favorable to her, the Court finds that Plaintiff has pled allegations sufficient to survive—even if barely—Defendant's pending motion.  Similar to cases where courts have found that Title VII extends to an individual's lack of a particular religious belief or lack of stringency in a particular set of religious beliefs, the Court is persuaded that an individual's decision as to "where" and "how" to practice her religion falls within the ambit of protected religious activity under both Title VII and the NJLAD.  Thus, Plaintiff's choice not to practice her religion at a particular denomination or location (*i.e.*, her former church where Ms. Wilson still practiced) is "religious in nature," and any adverse employment action taken by her employer or any harassing conduct suffered by Plaintiff because of that choice would run afoul of Title VII and the NJLAD in the eyes of this Court.  Because the Court considers the decision of "where" and "how" to practice one's religion a protected religious activity and/or belief, the Court is not persuaded by Defendant's argument that Plaintiff's retaliation claim necessarily must have been made in bad faith.  Discovery may show that Plaintiff's internal and external complaints of religious discrimination were, in fact, made in bad faith, but that is not before the Court on a motion to dismiss.

8

Although the Court has determined that Plaintiff has met her pleading burden to survive a motion to dismiss, the Court is troubled by some of Defendant's accusations.  Specifically, Defendant alleges that Ms. Smith is "a serial plaintiff who has filed religious discrimination claims against two other prior employers with the same counsel . . . alleg[ing] that she was terminated because she was unable to work on Sundays due to her religious beliefs."  [Defendants Brief at 15, n. 7.]  Defendant also alleges that it terminated Plaintiff's employment "for leaving medication unattended in a resident's room," a fact that, if proven, would alone seem to justify Defendant's termination of Plaintiff's employment.  [*Id.* at 8]  Thus, the Court makes the following notation:  it expects compliance with the requirement of Federal Rule of Civil Procedure 11—that the party making a submission to the Court make a reasonable inquiry into both the facts and law.  *See Schering Corp. v. Pharmaceuticals, Inc.*, 889 F.2d 490, 496 (3d Cir. 1989).  In the event that discovery proves that Plaintiff's claims were not filed in good faith—either because of some obvious, non-discriminatory reason for Defendant's termination of Plaintiff's employment or if information comes to light showing that Plaintiff's case is a repeated attempt to abuse the federal court system by filing frivolous lawsuits claiming religious discrimination—the Court will respond accordingly and may consider imposing Rule 11 sanctions and/or the award of Defendant's attorney fees.  The Court reminds counsel that sanctions under Rule 11 do not even require a showing of bad faith:  the party to be sanctioned need only have engaged in objectively unreasonable conduct in making the submission at issue.  *See In re Taylor*, 655 F.3d 274, 282 (3d Cir.2011).

9

Needless to say, filings made in bad faith or for an improper purpose necessarily violate Rule 11.  *See Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 616 (3d Cir.1991).

## V.     CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss [Docket No. 8] shall be **denied**.  An accompanying Order as of today's date shall issue.


<u>March 3, 2022</u>                                    <u>s/Renée Marie Bumb</u>
Date                                                          Renée Marie Bumb
                                                               U.S. District Judge